O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON BUCKLEY,<br><br>            Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. EDCV 15-0147-KES<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Brandon Buckley ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") determining that his disability ended under section 1614(a)(3)(A) of the Social Security Act. For the reasons stated below, the Commissioner's decision is AFFIRMED.

**I.**

**BACKGROUND**

Plaintiff was born on July 9, 1983. Administrative Record ("AR") 291. At age 8, he was diagnosed with giant cell astrocytoma, a form of brain tumor. Id. He underwent two surgeries in 1992 and 1993 to remove the tumor. Id.

An MRI scan performed in May 2013 shows an area of encephalomalacia (*i.e.*, loss of brain tissue) in Plaintiff's right, frontal lobe corresponding with the location where the surgery was performed. AR 602-603.

Plaintiff was first found disabled as of April 1, 1992, based on meeting listing 12.02 for "organic mental disorders." AR 11, 13. In 1998 and 2002, Plaintiff's condition was re-evaluated and his disability found to be continuing. AR 11. In 2012-2013, however, when his condition was re-evaluated, he was determined to be "not disabled" since January 1, 2012. AR 11-22 (ALJ's decision dated 9/27/13).

The ALJ determined that Plaintiff's condition had improved, such that he no longer meets listing 12.02. AR 13. The ALJ then determined that Plaintiff nevertheless has the following "severe" impairments: (1) right frontal giant cell astrocytoma, status post-surgery, (2) seizure disorder, (3) history of attention deficit and hyperactivity disorder, (4) depression, and (5) lumbar disc disease. AR 13.

The ALJ determined that with these impairments, Plaintiff has the residual functional capacity ("RFC") to perform light work. AR 15. The ALJ also included the following non-exertional limits in her RFC:

> He can sustain concentration and attention, persistence and pace in two-hour blocks of time; interact and respond appropriately with coworkers and supervisors, but requires a causal, non-intense work environment with the general public; and perform simple, routine, and repetitive tasks. Lastly, the claimant must be redirected or reminded of his task one time per workday and be off-task five percent of the workday due to distractions from psychologically based symptoms.

AR 15.

With this RFC, the vocational expert ("VE") testified that Plaintiff could work as a packer, sales attendant or housekeeper. AR 21. Based on the VE's

testimony, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to work" and found Plaintiff "not disabled." AR 22.

## II.
## ISSUES PRESENTED

Plaintiff's appeal presents the following two issues: (1) whether the ALJ appropriately discredited the opinions of a doctor at Riverside County Mental Health (at AR 559) alleged to be a treating physician; and (2) whether the ALJ appropriately discredited the testimony and letters submitted by Plaintiff's family and friends (at AR 61-69 [mother's hearing testimony] and AR 263-289 [letters]). See Joint Stipulation ("JS") Dkt. 19 at 3.[1]

In essence, the parties dispute whether Plaintiff's brain injury limits his non-exertional functionality in ways greater than those accommodated by the RFC. In deciding this appeal, the Court' role is not to reweigh the evidence, but only to consider whether the ALJ committed legal error in weighing the evidence. Quintanilla v. Colvin, 2015 U.S. Dist. LEXIS 157368, *11-12 (C.D. Cal. Nov. 19, 2015) ("It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. If the ALJ's findings are supported by substantial evidence, [then] this Court may not engage in second-guessing.").

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[1] All page citations to the JS cite to the CM/ECF pagination.

# III.
# DISCUSSION

## A. Issue One

### 1. The opinions of the unidentified doctor from Riverside County Mental Health should be treated as those of an examining physician, not a treating physician.

Plaintiff first contends that the doctor who signed the 1-page form at AR 559 was a "treating physician." JS at 3.

In social security disability proceedings, the opinions of treating physicians are entitled to special deference. 20 C.F.R. §§ 404.1527; 404.1527(d)(2). The rationale for this rule is that a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). To obtain this deferential treatment, it is Plaintiff's burden to furnish evidence that his relationship with any particular medical provider was a treating relationship. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

Here, the 1-page form indicates that Plaintiff was seen by Riverside County Mental Health "since 7/2/2012 and was last seen 3/18/2013." AR 559. There is a blank for a "doctor signature" which is signed illegibly and dated "4/26/13." The fact that a doctor signed this form more than one month *after* the date identified as Plaintiff's last visit to receive treatment suggests that Plaintiff did not receive treatment from the signing doctor in April 2013 when he/she provided the opinions at issue. There are no treatment notes in the record from Riverside County Mental Health. There are no records describing what treatment Plaintiff received at Riverside County

Mental Health, which doctors he saw or how frequently he visited. Notably, in Plaintiff's briefing on this issue, Plaintiff never provides this doctor's name or refers to his/her gender – suggesting that Plaintiff does not know this doctor's name or his/her gender. JS at 3-7.

The Court finds it inappropriate to accord the "special deference" due a treating physician to the opinions of a doctor whose name and gender are apparently unknown to Plaintiff. Accordingly, the Court analyzes the ALJ's treatment of the opinions at AR 559 under the rules applicable to examining physicians. An "examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

**2. Riverside County Mental Health opined Plaintiff could not work a forty-hour week without decompensating.**

The form indicates a diagnosis of "mood disorder due to brain injury from giant cell astrocytoma." AR 559. As for Plaintiff's mental functioning, the signing doctor circled: "THOUGHT concrete, MEMORY intact, JUDGMENT mildly impaired" with evidence of "depression, anxiety, compulsive behavior and decreased energy." Id. The form notes that Plaintiff is taking anti-depressants "with reasonable response." Id. The form also notes that Plaintiff can "maintain a sustained level of concentration" and "interact appropriately with others" who are family, co-workers or supervisors, but not strangers. Id. The form indicates that Plaintiff cannot "sustain repetitive tasks for an extended period" or "adapt to new or stressful situations." Id. Plaintiff can, however, manage his own funds and do "self care." Id. When asked if Plaintiff "can complete 40 hr. work week without decompensating?," the signing doctor circled "no." Id.

Plaintiff contends that the ALJ discounted this last opinion concerning

decompensation[2] without providing a specific, legitimate reason and, therefore, failed to place sufficient restrictions in the RFC to address it. JS at 3.

### 3. The ALJ gave specific and legitimate reasons supported by substantial evidence for discrediting the decompensation opinion of Riverside County Mental Health.

The ALJ gave three reasons, numbered in **[brackets]** below, for giving "little weight" to the opinion of Riverside County Mental Health regarding Plaintiff's inability to work fulltime without decompensating:

> **[1]** the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. The provider failed to document positive objective clinical findings to explain her opinion. **[2]** It also appears she relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the clamant reported. Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints. **[3]** This opinion is also inconsistent with the claimant's admitted activities of daily living, which have already been described above in this section.

AR 19. If any one of these three reasons is "specific and legitimate" and

---

[2] Episodes of "decompensation" are defined by Social Security Regulations as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." Moreno v. Astrue, 2009 U.S. Dist. LEXIS 61281, 2009 WL 2151855, at *14 n.2 (S.D. Cal. July 17, 2009) (quoting 20 C.F.R. § 404, subpt. P, app. 1).

"supported by substantial evidence in the record," then the ALJ did not commit legal error in failing to account for Riverside County Mental Health's decompensation opinion in formulating Plaintiff's RFC.

### a. The Riverside County Mental Health decompensation opinion is conclusory.

An ALJ need not accept any physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986). Here, the ALJ found that this 1-page form (and, in particular, the disputed decompensation opinion) is "conclusory" and lacks documented "clinical findings" to explain how the doctor arrived at the opinion. This finding is supported by substantial evidence in the record.

As discussed above, there is nothing in the record indicating how long, if ever, the signing doctor had a treating relationship with Plaintiff, or even if the opinions circled on the form were based on the doctor's review of records from Plaintiff's prior visits versus his/her personal examination of Plaintiff. The form does not describe any testing performed at Riverside County Mental Health that would provide data from which to derive opinions about Plaintiff's functional capabilities. There is no evidence, for example, that the signing doctor ever administered standardized tests or asked Plaintiff to complete a task requiring sustained concentration and observed the results.

Plaintiff points out that there are undisputed clinical findings, cited in this form, that Plaintiff has a brain injury. JS at 5. He argues that those findings are sufficient to support the opinions of Riverside County Mental Health. Id. This argument, however, begs the question. The disputed issue is not whether Plaintiff has a brain injury – it is whether Plaintiff's brain injury means that he cannot complete a 40-hour workweek (even when allowed to be off-task five percent of the time in a non-intense environment) without

decompensating. The form provides no insight on why the unidentified doctor at Riverside County Mental Health concluded that it does. Examining psychiatrist Dr. Shirley Simmons concluded that it does not. AR 459. The ALJ did not err in giving greater weight to Dr. Simmons's opinions, since Dr. Simmons's opinions are based on her personal examination of Plaintiff and actual "tests to determine whether claimant had a mental dysfunction." AR 18, citing AR 454.[3]

Plaintiff also argues that it is error to conclude that the 1-page Riverside County Mental Health opinion lacks supporting clinical findings because other reports prepared by other doctors found that Plaintiff had trouble with memory and attention span. JS at 6. None of the other reports, however, opine that Plaintiff cannot work a 40-hour week without decompensating or provide support for that particular opinion. Rather, the cited report (at AR 299) conflicts with the opinions circled at Riverside County Mental Health that Plaintiff's memory is "intact" and Plaintiff can "maintain a sustained level of concentration." Cf., AR 299 and 559.

    b. <u>The Riverside County Mental Health decompensation opinion apparently relies on Plaintiff's subjective complaints</u>.

An ALJ can disregard medical opinions premised on the claimant's subjective complaints where the ALJ has already properly discounted those complaints. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989).

Here, the ALJ's finding that the unidentified doctor at Riverside County

---

[3] Dr. Simmons administered a (1) mental status examination, (2) Trails A and Trails B, (3) Wechsler Adult Intelligence Scale III, (4) Wechsler Memory Scale III and (5) Wide Range Achievement Test IV. AR 454. Plaintiff's mother reported that Dr. Simmons examined Plaintiff for approximately 45 minutes. AR 280.

Mental Health "relied quite heavily on the subjective report of symptoms and limitations" is supported by substantial evidence. There is no other basis provided in the report for the doctor's reaching the conclusion that Plaintiff's brain injury would cause the degree of functional limitations indicated. As discussed above, there is no evidence of a treating relationship or even an examination during which the signing doctor administered tests or observed Plaintiff's abilities.

The ALJ considered Plaintiff's subjective complaints concerning the severity of his limitations and discounted them for appropriate reasons, including inconsistency with his reported daily activities and his observed ability to concentrate during the hearing. AR 18-19. Specifically, the ALJ found that Plaintiff's "inability to maintain a job may be due to many factors unrelated to his alleged impairments, including a possible lack of motivation to work." AR 18. On appeal, the ALJ's credibility determination concerning Plaintiff was not challenged.

      c.    <u>The Riverside County Mental Health decompensation opinion is inconsistent with Plaintiff's daily activities</u>.

Inconsistency between a physician's opinion of a claimant's abilities and the claimant's daily activities suffices as a specific and legitimate reason to discount the physician's opinion if supported by substantial evidence. <u>Morgan</u>, 169 F.3d at 600-02; <u>Lindquist v. Colvin</u>, 588 Fed. App'x 544, 546 (9th Cir. 2014) ("The ALJ reasonably found that examining physician Dr. Schneider's conclusion that Lindquist would not be able to maintain attendance or focus in the workplace was inconsistent with Lindquist's daily activities …").

Here, the ALJ found that Plaintiff engages in a "somewhat normal level of daily activity and interaction." AR 18. The ALJ specifically noted that Plaintiff engages in the following daily activities:

The claimant admitted activities of daily living, including

> dressing and bathing independently, performing household chores, preparing meals, shopping for groceries, reading, using his computer and watching television.

AR 18. The ALJ also noted that Plaintiff "was involved in a diving accident in July of 2007" on a trip to Las Vegas. AR 17, citing AR 430-433.

With regard to chores, Plaintiff testified that he washes dishes, takes out the trash and mows the lawn. AR 49. The ALJ noted the testimony of Plaintiff's mother that he often fails to complete his chores in a satisfactory manner, but found that this could be due to "possible lack of motivation to do his chores." AR 19. With regard to preparing meals, Plaintiff testified he had "no problems" fixing sandwiches, cereal or microwaving food. AR 48. Plaintiff testified he goes grocery shopping with his mother four or five times each month. AR 49-50. Plaintiff testified that he purchases and reads two or three books every month (AR 50-51), uses email and Facebook and plays computer solitaire (AR 51) and watches two or three hours of television each day. AR 52. He has no difficulty bathing and dressing. AR 48-49. When asked if he could work in a warehouse moving packages from one area to another, he responded, "I could probably do that." AR 55.

Plaintiff's mother, with whom he lives, described his daily activities as getting something to drink and eat for breakfast, watching TV, reading, walking "most every day to the local store to get something to drink or snack on," talking to friends, listening to music, using the computer and having dinner with her. AR 223. He feeds the cat and performs personal grooming, albeit with reminders. AR 224-225. He can use the microwave, vacuum, dust, do laundry and mow the lawn. AR 225. He goes to church and family get-togethers "almost every weekend." AR 227. When asked for how long Plaintiff can pay attention, his mother responded, "That is not a cut and dry answer. It depends on what he is paying attention to." AR 228.

As the ALJ noted, many of the "physical and mental abilities and social interactions required to perform these activities are the same as those necessary for obtaining and maintaining employment." AR 18; see also Morgan, 169 F.3d at 600 ("Contrary to Morgan's claims of disability, the ALJ determined that Morgan's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of Morgan's ability to work."). Plaintiff's ability to complete his daily activities, without decompensating, is thus inconsistent with the opinions of Riverside County Mental Health.

While the record is replete with anecdotes of Plaintiff not finishing some task at hand, the record contains no evidence that the effort or stress of trying to perform any particular task ever caused Plaintiff to decompensate, *i.e.*, to become temporarily unable to perform his daily activities or socialize. Rather, the anecdotes consistently report that Plaintiff would stop working mid-task and start doing something else that he preferred, which the ALJ found could indicate lack of motivation rather than disability. AR 19. Thus, the ALJ did not err in finding that Plaintiff's daily activities, as reported by Plaintiff and others, are inconsistent with the decompensation opinion of Riverside County Mental Health.

**B.  Issue Two**

    **1.  To discount the testimony of non-medical sources, the ALJ must give a germane reason relevant to each witness.**

Only acceptable medical sources may provide medical opinions. 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Non-medical sources, however, such as

relatives, neighbors and clergy, may provide information concerning the severity of a claimant's symptoms and their effects on observable activities. 20 C.F.R. § 404.1513(d)(4). When an ALJ discounts the testimony of such lay witnesses, "he [or she] must give reasons that are germane to each witness." Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009). "It is entirely permissible for the ALJ to rely on the same rationale for rejecting the testimony of more than one witness so long as such rationale is relevant to both witnesses." Payton v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS 103880 (E.D. Cal. Sept. 27, 2010).

### 2. Non-medical sources testified that Plaintiff has difficulty completing tasks and remembering conversations.

The record contains testimony from the following non-medical sources, some of which report their personal observations of Plaintiff's behavior, and some of which go further by offering medical opinions concerning the reasons for Plaintiff's behavior:

• <u>Letter from Helen Cox, Plaintiff's ex-mother-in-law (AR 263)</u>: Ms. Cox describes how when asked to do a home maintenance chore, like painting a step, Plaintiff "begins the job with enthusiasm, but quickly becomes distracted and then frustrated by his inability to stay on task." Ms. Cox also describes the results of Plaintiff's employment in 2004 in a hospital maintenance department. When given a task, he would start it, but then "wander off" until he was let go.

• <u>Letter from Heather Weber, Plaintiff's ex-girlfriend (AR 263)</u>: Ms. Weber reports that Plaintiff "cannot concentrate on any one thing for longer than 10-15 minutes."

• <u>Letter from George Price, Plaintiff's family friend (AR 264)</u>: Mr. Price hired Plaintiff to do yard work, but found he was "unable to complete the job." He attributes Plaintiff's unsatisfactory work to trouble remembering

instructions. He also cites Plaintiff's tendency to repeat the same stories as evidence of memory problems.

- Letter from Jesse Lee Neugart, Plaintiff's high school friend (AR 268-269): Mr. Neugart reports that Plaintiff struggled while enrolled in special education classes and will repeat the same stories "4-5 times a day."

- Letter from Kathleen Jernigan, Plaintiff's cousin and neighbor (AR 274): Ms. Jernigan reports that Plaintiff "tells the same stories over and over" and forgets where the glasses and beverages are located at her house, despite visiting three or four times each week.

- Letter from Mehgan Jernigan, Plaintiff's cousin (AR 276): Ms. Jernigan reports that Plaintiff "repeats stories over and over again" and cannot remember to take out the trash when asked. He also becomes frustrated by his inability to play video games or sports.

- Letter from Hal Geant, Plaintiff's pastor (AR 277): When Plaintiff tried to help out around the church, Pastor Geant observed "he can only do a task 5-10 minutes and he wonders off."

- Letter from Christine Buckley, Plaintiff's mother (AR 278-289), questionnaire (AR 223-230) and testimony (AR 61-69): Ms. Buckley describes Plaintiff being hired to stock shelves at a liquor store owned by a family friend. After 8 days, he was let go because "he just could not keep up." AR 284. He "tried college at RCC completely plugged into the disabled program … and still failed 2 times." AR 284. When he does household chores like dishes or yard work, "they are not done right or not finished and left incomplete." AR 285. In the middle of a task, "he'll just get up and walk away. That's what he's done at everything that he's tried to work at." AR 63.

**3.  The ALJ properly disregarded medical opinion testimony offered by lay witnesses.**

With regard to all of the non-medical sources listed above, the ALJ

found as follows:

> [W]ith regard to the various statements made by the claimant's mother, friends, family, acquaintances, neighbors and friends, the undersigned notes that while a layperson can offer an opinions on a diagnosis, the severity of the claimant's symptoms, or the side effects of medications in relationship to the claimant's ability to work, the opinion of a layperson is far less persuasive on these some issues than are the opinions of medical professionals as relied on herein. Since these third parties are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the statements concerning the claimant's limitations is questionable. Most important, their statements are not supported by the clinical or diagnostic medical evidence that is discussed above. The undersigned finds the statements of these individuals are not credible to the extent their statements are inconsistent with the determination herein.

AR 16-17. Plaintiff characterizes this as an improper "blanket rejection" of their testimony simply because they are not doctors. JS at 13-14.

By finding these witnesses "not credible" only to the extent their statements are "inconsistent with the determination herein," the ALJ was not necessarily discrediting their observations of Plaintiff's behavior (*e.g.*, that he wanders off rather than completing tasks). Instead, the ALJ discredited their opinions that *the reason why* Plaintiff fails to complete chores is because his brain injury makes him incapable of completing chores. When they attributed Plaintiff's behavior to Plaintiff's brain injury, these lay witnesses were offering medical opinions. The ALJ need not provide any reason other than the lack of medical qualifications to reject the medical opinions of lay witnesses. 20 C.F.R. § 416.927(a)(2).

To the extent these witnesses offered non-medical opinions that Plaintiff

14

cannot work, the ALJ did give a germane reason for rejecting all of them; such opinions are inconsistent with medical evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 20015) ("[i]nconsistency with the medical evidence" is a germane reason for discrediting the testimony of a lay witness); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

The ALJ's finding of inconsistency is supported by substantial evidence. For example, Dr. Simmons's examination indicated fair short- and long-term memory and age-appropriate concentration and attention; there was no evidence that Plaintiff continued to receive regular, ongoing treatment for his childhood brain tumor; and, although he received treatment for his seizure disorder and depression, that treatment was essentially routine and conservative in nature. AR 14, 18, 218-33, 262-89, 291-303, 311-451, 456-459. This medical evidence suggested that while Plaintiff may have mild or moderate limitations in the areas of memory and attention, such limitations could be accommodated by restrictions in the RFC (*e.g.*, limiting Plaintiff to work that only requires sustained concentration for two-hour blocks of time and allows him to be off-task five percent of the time). AR 15.

Ultimately, after weighing the conflicting evidence, the ALJ determined that the reason for Plaintiff's behavior, as observed and reported by the non-medical witnesses, is lack of motivation to work rather than his brain injury. AR 18-19. While a different fact finder may have weighed the evidence differently and reasonably reached a different conclusion, the ALJ did not commit legal error in the process of weighing the evidence.

/ / /
/ / /
/ / /
/ / /

15

# IV.
# CONCLUSION

Based on the foregoing, **IT IS ORDERED THAT** judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: December 04, 2015

_____
KAREN E. SCOTT
United States Magistrate Judge